UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 13-2360
_____

BRIAN LOMBEL *et al.*,

Appellants,

v.

FLAGSTAR BANK, FSB,

Appellee.

_____

BRIEF OF APPELLEE FLAGSTAR BANK, FSB

Thomas M. Hefferon
*thefferon@goodwinprocter.com*
Joseph F. Yenouskas
*jyenouskas@goodwinprocter.com*
Daniel Zytnick
*dzytnick@goodwinprocter.com*
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC  20001
Tel.:  (202) 346-4000
Fax.:  (202) 346-4444

Andrew K. Stutzman
*astutzman@stradley.com*
Zeenat A. Iqbal
*ziqbal@stradley.com*
STRADLEY RONON STEVENS &
YOUNG, LLP
1250 Connecticut Avenue, NW,
Suite 500
Washington, DC  20036
Tel.:  (202) 822-9611
Fax.:  (202) 822-0140

Attorneys for Appellee

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-2360__    Caption: __Brian Lombel v. Flagstar Bank, FSB__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Flagstar Bank, FSB__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO

2.    Does party/amicus have any parent corporations?                ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
       Flagstar Bancorp Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☑ YES ☐ NO
      If yes, identify all such owners:
       MP Thrift Investments L.P.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: ___s/ Thomas M. Hefferon___    Date: ___7/11/2014___

Counsel for: ___Flagstar Bank FSB___

## CERTIFICATE OF SERVICE
**************************

I certify that on ___7/11/2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

___s/ Thomas M. Hefferon___                    ___7/11/2014___
(signature)                                              (date)

# **TABLE OF CONTENTS**

**Page**

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE................................................................2

I.    NATURE OF THE CASE ............................................................2

II.   COURSE OF PROCEEDINGS ....................................................4

III.  THE DISTRICT COURT'S RULING ...........................................5

STATEMENT OF FACTS ....................................................................7

I.    THE FINDER'S FEE ACT REGULATES MORTGAGE BROKERS. ........7

II.   ALLEGATIONS OF THE COMPLAINT ....................................10

III.  TABLE FUNDING .................................................................12

SUMMARY OF ARGUMENT ............................................................15

ARGUMENT ...................................................................................18

I.    THIS COURT'S DECISION IN PETRY MANDATES AFFIRMANCE
      BECAUSE DAVLAW DID NOT VIOLATE THE FFA. ...........................18

II.   THE LOMBELS CANNOT CLAIM ERROR WITH RESPECT TO A
      NONEXISTENT RULING ABOUT THE MEANING OF THE TERM
      "FINDER'S FEE" IN THE FFA. ..................................................20

III.  THE DISTRICT COURT CORRECTLY DISMISSED THE FFA
      CLAIM BECAUSE THE COMPLAINT FAILED TO PLEAD A
      VIABLE THEORY OF VICARIOUS LIABILITY UNDER
      MARYLAND LAW. .................................................................21

      A.    The Maryland General Assembly Did Not Authorize Any
            Vicarious Liability For FFA Violations.............................22

**Page**

B.    The District Court Properly Rejected The Lombels' Derivative Liability Theories. ...............................................27

   1.    *Marshall* Rejects Plaintiffs' Theory That Flagstar Can Be Liable For Conspiracy To Violate The FFA. ...........................27

   2.    The District Court Correctly Held That The Complaint Failed To Allege Any Basis For Principal-Agency Liability Under The FFA. ........................................39

      a.    The Complaint Failed To Allege That Davlaw Owed A Fiduciary Duty To Flagstar. .........................................40

      b.    The Complaint Failed To Plead Facts Showing Davlaw Had Power To Alter Flagstar's Legal Relations. ........................................48

   3.    The Complaint Did Not Allege That Flagstar Aided And Abetted Davlaw's FFA Violation. ..............................................51

      a.    The Lombels May Not Invent New Liability Theories For The First Time On Appeal. ......................................52

      b.    Maryland Law Does Not Allow Aiding And Abetting Statutory Violations Unless A Statute Provides Such Liability, Which the FFA Does Not. ............................54

IV.    THE COURT CAN AFFIRM THE JUDGMENT ON THE ALTERNATIVE GROUND THAT FEDERAL LAW PREEMPTS THE LOMBELS' FFA CLAIM. ...........................................58

CONCLUSION ........................................................60

# TABLE OF AUTHORITIES

**CASES:**                                                                    **Page**

*Affordable Communities of Missouri v. Federal Nat'l Mortg. Ass'n*,
   714 F.3d 1069 (8th Cir. 2013) ...........................................................46

*Alfeo v. Dinsmore*,
   861 N.E.2d 491 (Mass. App. Ct. 2007) ............................................13

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*
   665 A.2d 1038 (Md. 1995) ...............................................................57

*Anderson v. Discovery Communications, LLC*,
   517 F. App'x 190 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1009 (2014) ...........45

*Andrews v. Poe*,
   30 Md. 485 (1869) ..............................................................................37

*Applestein v. Fairfield Resorts*,
   2009 WL 5604429 (Md. Ct. Spec. App. July 8, 2009)......................51

*Bahari v. Countrywide Home Loans*,
   2005 WL 3505604 (D. Md. Dec. 16, 2005) ......................................35

*Baltimore-Wash. Tel. Co. v. Hot Leads Co., LLC*,
   584 F. Supp. 2d 736 (D. Md. 2008)..................................................55

*Beech Aircraft Corp. v. United States*,
   51 F.3d 834 (9th Cir. 1995) ..............................................................54

*BEP, Inc. v. Atkinson*,
   174 F. Supp. 2d 400 (D. Md. 2001)..................................................34

*Binney v. ABN Amro Mortg. Group, Inc.*,
   2006 WL 2310264 (E.D. Mich. Aug. 9, 2006)..................................14

*Birkbeck v. Marvel Lighting Corp.*,
   30 F.3d 507 (4th Cir. 1994) ..............................................................27

iii

*Bordley v. State*,
46 A.3d 1204 (Md. Ct. Spec. App. 2012)...........................................................57

*Brooks v. Euclid Sys. Corp.*,
827 A.2d 887 (Md. Ct. Spec. App. 2003)...........................................................47

*Camat v. Federal Nat'l Mortg. Ass'n*,
2012 WL 2370201 (D. Haw. June 22, 2012)..............................................14, 15

*Carson v. McNeal*,
375 F. Supp. 2d 509 (S.D. Miss. 2005) .............................................................47

*Central Bank of Denver v. First Interstate Bank*,
511 U.S. 164 (1994).........................................................................................24

*Chase Manhattan Mortg. Corp. v. Scott, Royce, Harris, Bryan, Barra &
Jorgensen, P.A.*,
694 So. 2d 827 (Fla. Dist. Ct. App. 1997).........................................................46

*City of Baltimore Dev. Corp. v. Carmel Realty Assocs.*,
910 A.2d 406 (Md. 2006) .................................................................................38

*City of New York v. Milhelm Attea & Bros., Inc.*,
2009 WL 701005 (E.D.N.Y. Mar. 11, 2009)......................................................24

*Coner v. Morris S. Berman Unlimited, Inc.*,
501 A.2d 458 (Md. Ct. Spec. App. 1985)...........................................................37

*Consumer Protection Division v. Morgan*,
874 A.2d 919 (Md. 2005) .................................................................................57

*Darby v. South Carolina*,
355 F. App'x 751 (4th Cir. 2009) .....................................................................54

*Demory Bros. v. Bd. of Pub. Works*,
316 A.2d 529 (Md. Ct. Spec. App. 1974)...........................................................38

*Dorsey v. State*,
968 A.2d 654 (Md. Ct. Spec. App. 2009)...........................................................23

iv

*Eastside Vend Distribs., Inc. v. Coca-Cola, Enters. Inc.*,
  2006 WL 1516012 (Md. Cir. Ct. Balt. City May 8, 2006) .................................56

*EEOC v. AIC Sec. Investigations, Ltd.*,
  55 F.3d 1276 (7th Cir. 1995) ..........................................................................26

*Etgen v. Washington County Bldg. & Loan Ass'n*,
  41 A.2d 290 (Md. 1945) ..................................................................................33

*Fare Deals Ltd. v. World Choice Travel.Com, Inc.*,
  180 F. Supp. 2d 678 (D. Md. 2001) .............................................................43, 50

*Farwell v. Story*,
  2011 WL 2359622 (D. Md. June 8, 2011) .......................................................35

*Fisher v. Bethesda Discount Corp.*,
  157 A.2d 265 (Md. 1960) .................................................................................25

*Fisher v. McCrary Crescent City, LLC*,
  972 A.2d 954 (Md. Ct. Spec. App. 2009) ........................................................33

*Fister v. Allstate Life Ins. Co.*,
  783 A.2d 194 (Md. 2001) .................................................................................23

*Franklin v. Mazda Motor Corp.*,
  704 F. Supp. 1325 (D. Md. 1989) ....................................................................22

*Freeman v. DirecTV, Inc.*,
  457 F.3d 1001 (9th Cir. 2006) ....................................................................22, 24

*George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*,
  14 A.3d 1193 (Md. Ct. Spec. App. 2011) ........................................................35

*Glaser v. Enzo Biochem, Inc.*,
  126 F. App'x 593 (4th Cir. 2005) ....................................................................24

*GMAC Mortg., LLC v. McKeever*,
  2010 WL 3470312 (E.D. Ky. Aug. 31, 2010) .............................................13, 14

*Green v. H&R Block, Inc.*,
  735 A.2d 1039 (Md. 1999) .........................................................................passim

*Greenpoint Mortg. Funding, Inc. v. Stewart Title Ins. Co.*,
  854 N.Y.S.2d 185 (N.Y.A.D. 2008) ............................................................14, 15

*Hairston v. Multi-Channel TV Cable Co.*,
  79 F.3d 1141, 1996 WL 119916 (4th Cir. 1996).........................................24, 58

*Harmon v. BankUnited*,
  2009 WL 3487808 (D. Md. Oct. 22, 2009) ...........................................42, 45, 50

*Homa v. Friendly Mobile Manor, Inc.*,
  612 A.2d 322 (Md. Ct. Spec. App. 1992)............................................................43

*IFAST, Ltd. v. Alliance for Telecommunications Industry Solutions, Inc.*,
  2007 WL 3224582 (D. Md. Sept. 27, 2007)........................................................50

*In re Minh Vu Hoang*,
  2012 WL 195316 (Bankr. D. Md. Jan. 23, 2012)...............................................36

*Integrated Consulting Servs., Inc. v. LDDS Commc'ns, Inc.*,
  1999 WL 218740 (4th Cir. Apr. 15, 1999)...........................................42, 43, 50

*Jackson v. 2109 Brandywine, LLC*,
  952 A.2d 304 (Md. Ct. Spec. App. 2008)...........................................................42

*Jones v. Baltimore City Police Dep't*,
  606 A.2d 214 (Md. 1992) .................................................................................26

*Jones v. Nationscredit Financial Services Corp.*,
  No. 24-C-02-000572 (Md. Cir. Ct. Balt. City Aug. 9, 2005) ............................57

*Karpel v. Inova Health Sys. Servs.*,
  134 F.3d 1222 (4th Cir. 1998) .........................................................................52

*Kohler v. State*,
  36 A.3d 1013 (Md. Ct. Spec. App. 2012).........................................................57

*Kuns v. Ford Motor Co.*,
  543 F. App'x 572 (6th Cir. 2013) .....................................................................54

*Kushell v. Dep't Of Natural Res.*,
  870 A.2d 186 (Md. 2005) .................................................................................56

vi

*Mackey v. Compass Marketing, Inc.*,
   892 A.2d 479 (Md. 2006) ...................................................................33

*Madden v. Bhd. & Union of Transit Emps.*,
   147 F.2d 439 (4th Cir. 1945) .............................................................38

*Manikhi v. Mass Transit Admin.*,
   758 A.2d 95 (Md. 2000) ....................................................................33

*Marriott Emps. Fed. Credit Union v. Motor Vehicle Admin.*,
   697 A.2d 455 (Md. 1997) ..................................................................55

*Marshall v. James B. Nutter & Co.*,
   2014 WL 3361296 (4th Cir. July 10, 2014) ................... 3, 15, 17, 28, 30, 31, 33

*Marshall v. James B. Nutter & Co.*,
   2013 WL 3353475 (D. Md. July 2, 2013) ..........................................2

*Maryland-Nat'l Capital Park & Planning Comm'n v. Anderson*,
   909 A.2d 694 (Md. 2006) ..................................................................56

*Md. Econ. Dev. Corp. v. Montgomery County*,
   64 A.3d 478 (Md. 2013) ....................................................................36

*MEMCO v. Maryland Emp't Sec. Admin.*,
   375 A.2d 1086 (Md. 1977) ................................................................23

*MM v. Sch. Dist.*,
   303 F.3d 523 (4th Cir. 2002) ......................................................19, 58

*NCR Corp. v. Comptroller of the Treasury, Income Tax Div.*,
   544 A.2d 764 (Md. 1988) ..................................................................38

*Ocwen Loan Servicing, LLC v. Branaman*,
   554 F. Supp. 2d 645 (N.D. Miss. 2008)............................................47

*Outmezguine v. State*,
   641 A.2d 870 (Md. 1994) ..................................................................56

*Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*,
   905 F. Supp. 2d 675 (D. Md. 2012)...................................................35

*Petry v. Prosperity Mortgage Co.*,
  2014 WL 3361828 (4th Cir. July 10, 2014) ........................................2, 3, 18, 19

*Petry v. Prosperity Mortgage Co.*,
  597 F. Supp. 2d 558 (D. Md. 2009).....................................................2, 7, 54, 56

*Petry v. Prosperity Mortgage Co.,*
  924 F. Supp. 2d 627 (D. Md. 2013).....................................................2, 3, 17, 34

*Pettit v. Retrieval Masters Creditor Bureau, Inc.*,
  211 F.3d 1057 (7th Cir. 2000) ...............................................................24

*Proctor v. Holden*,
  540 A.2d 133 (Md. Ct. Spec. App. 1988).................................................42

*Rentokil, Incorporated-Tropical Plant Servs. v. Creative Plantscapes, Inc.*,
  202 F.3d 259, 1999 WL 1092641 (4th Cir. 1999)..............................45

*Rice v. Paladin Enters., Inc.*,
  128 F.3d 233 (4th Cir. 1997) ..............................................................57

*Ritchie v. Donnelly*,
  597 A.2d 432 (Md. 1991) ...................................................................22

*Robertson v. Parks*,
  24 A. 411 (Md. 1892) .........................................................................33

*Rogan v. Baltimore & Ohio R.R., Co.*,
  52 A.2d 261 (Md. 1947) ....................................................................25

*Sapp v. Potter*,
  413 F. App'x 750 (5th Cir. 2011) .......................................................21

*Schear v. Motel Mgmt. Corp. of America*,
  487 A.2d 1240 (Md. Ct. Spec. App. 1985).........................................51

*Schweizer v. Keating*,
  150 F. Supp. 2d 830 (D. Md. 2001)....................................................51

*Shenker v. Laureate Educ., Inc.*,
  983 A.2d 408 (Md. 2009) ...........................................................passim

viii

*State Ethics Comm'n v. Evans*,
    855 A.2d 364 (Md. 2004) ......................................................................39

*Stevenson v. City of Seat Pleasant*,
    743 F.3d 411 (4th Cir. 2014) ...............................................................19

*Suntrust Mortg., Inc. v. Unlimited Fin. Servs., LLC*,
    2012 WL 1427849 (E.D. Va. Apr. 24, 2012) ......................................15

*Sweeney v. Savings First Mortgage, LLC*,
    879 A.2d 1037 (2005)....................................................................passim

*Terry v. SunTrust Banks, Inc.*,
    493 F. App'x 345 (4th Cir. 2012) .........................................................47

*Thomas v. Citimortgage, Inc.*,
    2013 WL 4786060 (D. Mass. Sept, 5, 2013) ........................................58

*Thomason v. Hitachi Elec. Devices (USA), Inc.*,
    194 F.3d 1305, 1999 WL 765875 (4th Cir. 1999)..............................52

*Underwood v. NMC Mortg. Corp.*,
    2009 WL 1269465 (D. Kan. May 6, 2009) ..........................................14

*United States v. Schronce*,
    727 F.2d 91 (4th Cir. 1984) ..................................................................54

*Wadlington v. Credit Acceptance Corp.*,
    76 F.3d 103 (6th Cir. 1996) ..................................................................24

*Wahi v. Charleston Area Med. Ctr., Inc.*,
    562 F.3d 599 (4th Cir. 2009) ................................................................52

*White v. Bank of America*,
    2013 WL 3944442 (D. Md. July 30, 2013) ..........................................43

*Zornes v. Specialty Industries, Inc.*,
    166 F.3d 1212, 1998 WL 886997 (4th Cir. 1998)...............................44

ix

## STATUTES:

12 U.S.C. §§ 1461 *et seq.*............................................................17, 18, 58, 59

15 U.S.C. § 1692k..............................................................................24

28 U.S.C. § 1332(d)..............................................................................4

28 U.S.C. § 1441..................................................................................4

Md. Code Bus. Reg. § 14-227...............................................................26

Md. Code Com. Law § 11-204(a)(3)......................................................56

Md. Code Com. Law § 12-636...............................................................26

Md. Code Com. Law § 12-801...........................................9, 20, 23, 30

Md. Code Com. Law § 12-801(f)............................................................18

Md. Code Com. Law § 12-803..................................................................9

Md. Code Com. Law § 12-804.........................................................passim

Md. Code Com. Law § 12-805(c).........................................................9, 23

Md. Code Com. Law § 12-807.........................................................passim

Md. Code Cts. & Jud. Proc. § 3-504.....................................................26

Md. Code Cts. & Jud. Proc. § 5-805.....................................................26

Md. Code Fin. Inst. § 11-501(I).............................................................18

Md. Code Fin. Inst. § 11-501(i)(1).........................................................30

Md. Code Fin. Inst. § 11-501(j)(i)(1)......................................................30

Md. Code Fin. Inst. § 11-523(b), (c)......................................................26

Md. Code Fin. Inst. § 12-801(f)..............................................................30

x

Md. Code Health Occ. § 4-601 ................................................................56

Md. Code Ins. § 27-204 ..............................................................26, 55

Md. Code Lab. & Empl. § 3-915 ................................................26, 55

Md. Code Nat. Res. § 5-409(a) ..................................................26, 55

Md. Code State Gov't § 20-801(1) ............................................26, 55

## OTHER AUTHORITIES:

12 C.F.R. §§ 22.2(l), 172.2(l), 208.25(b)(11), 339.2(l), 391.31(l), 572.2(l), 614.4925(j), 760.2(l), 1024.2(b) ..................................................13

12 C.F.R. § 1026, Supp. I to Part 1026, § 36(a)(1)(ii)............................14

24 C.F.R. App'x A to Part 3500 ..............................................................14

24 C.F.R. § 22.3(b) ..................................................................................14

24 C.F.R. § 172.3(b) ................................................................................14

24 C.F.R. § 391.32(b) ..............................................................................14

24 C.F.R. § 3500.2 (2012) ......................................................................13

24 C.F.R. § 3500.2(b) ..............................................................................14

Fed. R. Civ. P. 9(b) ...................................................................................5

Paul Muolo, *Loan Brokers Again See a Slight Gain in Market Share*, National Mortgage News (Jun. 22, 2012), http://www.nationalmortgagenews.com/dailybriefing/loan-broker-market-share-mortgage-broker-origination-share-1031063-1.html ...................13

xi

## JURISDICTIONAL STATEMENT

Appellee Flagstar Bank FSB ("Flagstar") agrees with the jurisdictional statement submitted by Plaintiff-Appellants Brian and Allison Lombel ("Lombels").

## STATEMENT OF THE ISSUES

The Lombels allege that  Davlaw Enterprises Inc. ("Davlaw") violated the Maryland Finder's Fee Act ("FFA"), which prohibits a "mortgage broker" from charging a "finder's fee" in certain circumstances, and penalizes any "mortgage broker" who violates the statute.  Md. Code Com. Law §§ 12-804(e), 12-807.  The Lombels sued Flagstar only, however, seeking to impose vicarious liability for Davlaw's alleged violations.  The issues presented are:

1.      Whether the District Court properly dismissed the FFA claim against Flagstar because, under this Court's holding in *Petry v. Prosperity Mortgage Company*, Davlaw did not violate the FFA and Flagstar cannot be vicariously liable for a violation?

2.      Whether the District Court properly dismissed the FFA claim against Flagstar because Maryland law does not permit the Lombels' efforts to hold Flagstar liable under derivative liability theories?

3.       Whether this Court can affirm the judgment on the alternative ground that federal law preempts the state law claim?

## STATEMENT OF THE CASE

### I.     NATURE OF THE CASE

This is one of several cases filed by the Lombels' counsel in the District of Maryland seeking to impose liability under the FFA for violations of the statute involving mortgage brokers on entities who are not mortgage brokers.

The district judges hearing the two other cases dismissed them.  In *Petry v. Prosperity Mortgage Co.*, Judge Nickerson held that defendants who were not mortgage brokers could not be liable for (1) aiding and abetting a mortgage broker in violating the FFA, because the statute does not permit this type of liability, 597 F. Supp. 2d 558, 564 (D. Md. 2009); or (2) conspiring to violate the Act because non-mortgage brokers are not "legally capable" of violating the FFA.  924 F. Supp. 2d 627, 647 (D. Md. 2013).  In *Marshall v. James B. Nutter & Co.*, Judge Bennett likewise rejected  plaintiffs' conspiracy theory because the defendant, which was not a mortgage broker, was not "legally capable" of violating the FFA.  2013 WL 3353475, at *4-5 (D. Md. July 2, 2013).

This Court affirmed both dismissals, issuing published opinions in each case on July 10, 2014, as Flagstar was finalizing this brief.   *Petry v. Prosperity*

2

*Mortgage Co.*, 2014 WL 3361828 (4th Cir. July 10, 2014); *Marshall v. James B. Nutter & Co.*, 2014 WL 3361296 (4th Cir. July 10, 2014).

The Court affirmed the dismissal in *Petry* on alternate grounds, concluding that the alleged mortgage broker accused of violating the FFA did not violate the FFA because it was named as the lender on the loan documents. 2014 WL 3361828 at *5. Without the underlying liability, the alleged broker's codefendants were not liable for conspiracy and aiding-and-abetting the alleged FFA violation. *Id.* at *7.

In *Marshall*, the Court agreed with the District Court that a defendant alleged to be a "funding lender" was not "legally capable" of violating the FFA, and therefore could not be liable for conspiring to violate the FFA. 2014 WL 3361296, at *4.

As in *Petry* and *Marshall*, the Complaint here claims that Davlaw was a mortgage broker that violated the FFA by charging impermissible finder's fees, but Davlaw was not named as a defendant. Rather, the Lombels tried to impose statutory liability on Flagstar for being a funding lender that conspired with Davlaw to violate the FFA, and also asserted that Flagstar was liable under a *respondeat superior* theory because Davlaw was its agent. The District Court

3

rejected both theories as inconsistent with Maryland law, and dismissed the FFA claim.

The District Court also dismissed four other causes of action, but the Lombels do not appeal from those portions of the order.

## II.    COURSE OF PROCEEDINGS

Appellants filed a putative class action in the Maryland state court.  They asserted five causes of action, all against Flagstar only – one for liability under the FFA, one under another Maryland statute, and three common law claims.  Flagstar timely removed the action to the District of Maryland pursuant to 28 U.S.C. §§ 1332(d) and 1441.

Flagstar moved to dismiss the Complaint.  Dkt. No. 22.  Recognizing that federal judges had rejected similar FFA legal theories in other cases brought by their counsel, the Lombels' first response was to move to certify to the Maryland Court of Appeals three questions purportedly related to Flagstar's motion to dismiss (Dkt. No. 27), and to request a stay of Flagstar's motion to dismiss pending resolution of the certification motion.  Dkt. No. 28.  Later, and again trying to avoid an adverse ruling, the Lombels filed another motion to stay this time asking the District Court to refrain from ruling on Flagstar's motion to dismiss until this

4

Court decided the *Petry* appeal.  Dkt. No. 41.  Flagstar opposed the motions.   Dkt.

Nos. 32, 33, 43.

On October 11, 2013, the District Court issued a Memorandum Opinion and

an Order granting Flagstar's motion to dismiss.  The Court also denied the

Lombels' certification motion and their motions to stay.

## III.  THE DISTRICT COURT'S RULING

In its nineteen-page Opinion, the District Court evaluated each claim

asserted by the Lombels, and found that the Complaint failed to state a cognizable

claim for relief and failed to plead fraud with particularity under Rule 9(b).

On the FFA claim, the District Court first noted that the Complaint alleged

only that Davlaw, a mortgage broker, charged the Lombels finder's fees in

violation of the FFA; that the Complaint did not allege that Flagstar charged or

received any allegedly-illegal finder's fees; and that the Lombels had not sued

Davlaw.  Opinion at 7 (JA461).  It therefore properly held that the Lombels were

seeking to hold Flagstar liable under the FFA solely on the basis of vicarious

liability for Davlaw's alleged conduct.  *Id.*

Quoting the Maryland Court of Appeals' decision in *Sweeney v. Savings

First Mortgage, LLC*, 879 A.2d 1037, 1048-49 (2005), the District Court began its

analysis by observing that the FFA "is very narrow in its scope:  it applies only to

5

mortgage brokers and the fees they charge borrowers." *Id.* at 8 (JA462). It

correctly found that Flagstar did not directly violate the statute "because it was not,

and is not alleged to have been, a 'mortgage broker' with respect to Plaintiffs'

refinancing." *Id.*

Having found Flagstar immune under the FFA, the District Court then

addressed and rejected the Lombels' theory that Flagstar nevertheless could be

sued under the FFA for allegedly conspiring with Davlaw. It relied for that

conclusion on *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 428 (Md. 2009),

where the Maryland Court of Appeals held that "a defendant may not be adjudged

liable for civil conspiracy unless that defendant was legally capable of committing

the underlying tort alleged." Opinion at 8 (JA462). The Court held that because

Flagstar "cannot have committed the underlying violation of the FFA, it also

cannot be liable for conspiring to do so." It dismissed the Lombels' contrary

arguments for imposing conspiracy liability as a "straw man" and "bewilderingly

circular." *Id.* at 8-9.

The District Court next dismissed the Lombels' alternate theory that Flagstar

could be liable under the FFA because Davlaw allegedly was Flagstar's agent. It

applied the familiar three-part test for finding the existence of a principal-agent

relationship (Order at 9-10 (JA463-64), citing *Harmon v. BankUnited*, 2009 WL

3487808, at *4 (D. Md. Oct. 22, 2009)), and held that test was not met because allegations that Davlaw sold loans to Flagstar failed to show that Davlaw had a duty to act in Flagstar's best interest. *Id.* at 10-11. Although the Complaint did not assert an aiding-and-abetting theory as to the FFA violation, the District Court also explained that the FFA does not permit aiding and abetting liability. *Id.* at 9 (citing *Petry*, 597 F. Supp. 2d at 565).

The Court next granted Flagstar's motion to dismiss the Lombels' four other causes of action on various grounds, denied their motion to certify questions to the Maryland Court of Appeals, and denied their two stay motions. *Id.* at 11-19 (JA465-73). The Lombels do not appeal dismissal of those claims or denial of those motions.

## STATEMENT OF FACTS

The Lombels claim that their mortgage broker, Davlaw, violated the FFA, and seek to impose liability on Flagstar for that alleged violation. The statute itself shows why their endeavor was ill-founded.

## I.    THE FINDER'S FEE ACT REGULATES MORTGAGE BROKERS.

As the Maryland Court of Appeals has held, the FFA "is very narrow in its scope: it applies only to mortgage brokers and the fees they charge borrowers." *Sweeney*, 879 A.2d at 1048-49. The key provision provides:

7

> A *mortgage broker may not charge a finder's fee* in any transaction in which the mortgage broker or an owner, part owner, partner, director, officer, or employee of the mortgage broker is the lender or an owner, part owner, partner, director, officer, or employee of the lender.

Md. Code Com. Law § 12-804(e) (emphasis added).   Section 12-804(e) applies to one entity – a "mortgage broker" – and prohibits a mortgage broker from charging a finder's fee in transactions where the broker or others related to the broker are the lender or related to the lender.  The provision does not prohibit lenders from charging finder's fees, or regulate lenders at all.

The penalty provision for violations (Section 12-807) likewise requires forfeiture of three times the finder's fee charged, or $500, by "[a]ny *mortgage broker* who violates any provision of this subtitle."  Again, the General Assembly decided to penalize only mortgage brokers for statutory violations, and made no mention of lenders.  It chose that specific language over a broader alternative provision, which would have penalized "*any person* who knowingly violates any provision of this subtitle."  1979 Ch. 351 (H.B. 725) (page 1063) (JA155) (emphases added).

The rest of section 12-804 likewise applies only to fees charged by mortgage brokers:

- "A *mortgage broker may charge a finder's fee not in excess* of 8 percent of the amount of the loan."   Md. Code Com. Law § 12-804(a);

8

- "In addition to a finder's fee, *a mortgage broker may charge* a borrower for the actual cost of [certain items]." *Id.* § 12-804(b);

- "A *mortgage broker* obtaining a mortgage loan with respect to the same property more than once within a 24-month period *may charge a finder's fee only on* so much of the loan as is in excess of the initial loan." *Id.* § 12-804(c);

- "The provisions of this section do not apply to … [a]ttorney's fees unless the attorney is *functioning as a mortgage broker*." *Id.* § 12-804(d)(2) (emphases added).

The Act's preamble further confirms its focus on fees charged by mortgage brokers. Specifically, the General Assembly stated that it passed the FFA to "creat[e] a subtitle regulating the charging of finder's fees *by mortgage brokers* … and generally relating to the charging of finder's fees *by mortgage brokers*[.]" Preamble, 1979 Ch. 351 (page 1061) (JA153) (emphasis added).

The General Assembly understood that loan transactions with mortgage brokers involve *lenders*. The FFA provides separate definitions of the two terms (Md. Code Com. Law § 12-801(e) & 801(f)) and addresses "lenders" in several provisions. *Id.* §§ 12-803 (broker may not be a director, officer or employee of any lender where loan is placed), 12-804(e) (broker may not charge finder's fee if it is lender), 12-805(c) (requiring lender to make disclosure if finder's fee is to be paid from loan proceeds). But in regulating the amounts of permissible finder's fees, limiting the circumstances in which they may be charged, and assessing penalties for violations relating to finder's fees, the General Assembly chose not to

9

regulate the conduct of lenders or create any liability on lenders for any conduct whatsoever.

## II.    ALLEGATIONS OF THE COMPLAINT

The Lombels alleged the following facts, all of which the District Court assumed as true for purposes of Flagstar's motion to dismiss (Opinion at 2) (JA456):

To refinance an existing loan, the Lombels borrowed $226,000 from Davlaw in May 2012.  Class Action Complaint and Demand for Jury Trial ("Complaint") ¶¶ 12 & 27 & Ex. 3 (JA8-47, 54-57).  They executed a Note evidencing their indebtedness, payable to Davlaw.  Exhibit 3 to Complaint (JA54-57).  They also signed a deed of trust to secure repayment; it identified Davlaw as "Lender." Exhibit 4 to Complaint (JA58-78).

The Lombels understood that Davlaw could sell their loan.  In Paragraph 1 of the Note the Lombels stated that they "understand that the Lender may transfer this Note."  Exhibit 3 to Complaint (JA55).  The deed of trust likewise stated that the Note "can be sold one or more times without prior notice to Borrower." Exhibit 4 to Complaint at pp. 1 & 9 (§ 20) (JA59, 67).  According to the Complaint, at the time of closing the loan was assigned to Flagstar, which provided

the funding for the loan, in a process known as table-funding.  Complaint ¶ 33

(JA15).

The Lombels did not allege any problem with the loan or its terms.  Rather,

they allege that they paid an "origination charge" and a "broker yield spread-

premium" at closing, and that the charges were unlawful "finder's fees" under the

FFA because Davlaw acted as mortgage broker and lender in the loan transaction.

Complaint ¶¶ 13, 28-30 (JA11, 14-15).

Appellants did not sue Davlaw, however.  Rather, they filed suit against

Flagstar only.  But they nowhere allege that they had any interaction with Flagstar

of any kind throughout the entire loan transaction.

The Complaint also alleges almost nothing about Davlaw itself, and instead

asserts that unidentified "mortgage broker/lenders" had a duty to act primarily for

Flagstar's benefit, solicited mortgage loans "solely for assignment to Flagstar," and

had the power to alter Flagstar's legal relations with third-parties.  Complaint ¶¶

42-43 (JA17).  The Complaint also asserts that Flagstar "conspired with mortgage

broker/lenders" in making table-funded loans and "conspired with and aided and

abetted the mortgage broker/lenders in making false and misleading statements."

*Id.* ¶¶ 49, 52 (JA18, 20).

11

The Complaint does not allege that Flagstar directed what loan fees Davlaw should charge.  Nor is there any allegation that Flagstar agreed or required that Davlaw would solicit loans only for Flagstar.  And, although the Complaint alleged that Davlaw acted as an agent of Flagstar, the Lombels attached a Flagstar form which instead stated that Davlaw was its "Wholesale Customer."  Exhibit 2 to Complaint (JA53).

## III.    TABLE FUNDING

The Lombels alleged that table-funding of loans is "unscrupulous." Complaint ¶ 3 (JA9).  However, table funding is merely an arrangement in which a mortgage broker obtains funds for a mortgage loan from a funding lender (sometimes in advance of closing and sometimes after), in exchange for assigning the rights in the loan to the funder.  As the United States Department of Housing and Urban Development ("HUD") explained:

> Some mortgage brokers process loans and close loans in their own names.  However, at or about the time of settlement, they transfer these loans to lenders that simultaneously advance funds for the loans. … In table-funded transactions, the mortgage broker does not furnish the capital for the loans.  Instead the lender provides the capital and, immediately after the loan is consummated, the mortgage broker delivers the loan package to that lender, including the promissory note, mortgage evidence of insurance, and assignments of all rights the mortgage broker held.

12

*GMAC Mortg., LLC v. McKeever*, 2010 WL 3470312, at *3 n.3 (E.D. Ky. Aug. 31, 2010) (quoting Disclosure of Fees Paid to Mortgage Brokers; Proposed Rule and Notice of Proposed Information Collection Requirements, http://www.hud.gov/offices/hsg/ramh/res/mrgbrkrl.cfm).  Table funding "is common in the residential mortgage lending industry."  *Alfeo v. Dinsmore*, 861 N.E.2d 491, 493 (Mass. App. Ct. 2007).  In the first quarter of 2012, around 10% of all residential mortgage loans were originated through table-funding.[1]

Federal regulators have likewise recognized table funding.  When HUD promulgated regulations to implement the Real Estate Settlement Procedures Act, "table funding" was included as a defined term:

> *Table funding* means a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds.

24 C.F.R. § 3500.2 (2012).[2]  Numerous federal regulations governing mortgage lending address – and allow – table funding:

---

[1]     Paul Muolo, *Loan Brokers Again See a Slight Gain in Market Share*, National Mortgage News (Jun. 22, 2012), http://www.nationalmortgagenews.com/dailybriefing/loan-broker-market-share-mortgage-broker-origination-share-1031063-1.html.

[2]     The same definition appears in many federal regulations.  *E.g.*, 12 C.F.R. §§ 22.2(l), 172.2(l), 208.25(b)(11), 339.2(l), 391.31(l), 572.2(l), 614.4925(j), 760.2(l), 1024.2(b).

- Issuing guidance for completing settlement statements, including instructions "for a mortgage broker originating a loan in its own name." 24 C.F.R. App'x A to Part 3500;

- "A Federal savings association that acquires a loan from a mortgage broker or other entity through table funding shall be considered to be making a loan for the purposes of this part." *Id.* § 172.3(b); *see also id*. §§ 22.3(b), 391.32(b);

- "For loans originated by a mortgage broker that closes a federally related mortgage loan in its own name in a table funding transaction, the lender is the person to whom the obligation is initially assigned at or after settlement." 24 C.F.R. § 3500.2(b);

- "Table funding occurs when the creditor does not provide the funds for the transaction at consummation out of the creditor's own resources . . . . Accordingly, a table[-]funded transaction is consummated with the debt obligation initially payable by its terms to one person, but another person provides the funds for the transaction at consummation and receives an immediate assignment of the note." 12 C.F.R. § 1026, Supp. I to Part 1026, § 36(a)(1)(ii).

Courts also recognize table-funding as a legitimate practice which facilitates

mortgage lending.[3]    Not at all surprisingly, and in contrast to the Lombels' cynical

---

[3]    *Camat v. Federal Nat'l Mortg. Ass'n*, 2012 WL 2370201, at *5 (D. Haw. June 22, 2012) (rejecting fraud and state law claims challenging "practice of table funding"); *GMAC Mortg.*, 2010 WL 3470312, at *3 & n.3 (rejecting fraud claim because loan documents allowed "transfer [of] the note and the security interest"); *Greenpoint Mortg. Funding, Inc. v. Stewart Title Ins. Co*., 854 N.Y.S.2d 185, 186-87 (N.Y.A.D. 2008) (describing table funding arrangement); *Underwood v. NMC Mortg. Corp*., 2009 WL 1269465, at *1 (D. Kan. May 6, 2009) ("Table funding allowed NMC to process loan applications quicker because it could underwrite the files itself"); *Binney v. ABN Amro Mortg. Group, Inc*., 2006 WL 2310264, at *1 (E.D. Mich. Aug. 9, 2006) (describing table funding by wholesale lenders).

14

post-closing Complaint, courts have rejected claims that a lender who provides

funds for a table-funded transaction should face vicariously liability.[4]  Indeed, the

parties each have different interests, which can and sometimes do diverge.  *E.g.*,

*Suntrust Mortg., Inc. v. Unlimited Fin. Servs., LLC*, 2012 WL 1427849, at \*1 (E.D.

Va. Apr. 24, 2012) (lender sues broker for breach of broker agreement).[5]

## SUMMARY OF ARGUMENT

A.    The District Court properly dismissed the Complaint because, as this

Court held in *Petry*, a party named as the lender in the loan documents is not a

"mortgage broker" under the FFA.  Thus, as in *Petry*, there was no underlying FFA

violation: Davlaw did not violate the statute.  This alternative ground for

---

[4]    *Camat*, 2012 WL 2370201, at \*5 ("No reasonable inference that First
Magnus was Countrywide Home Loans, Inc.'s agent flows from the allegation that
[Countrywide] may have provided the funds lent to Camat"); *Greenpoint*, 854
N.Y.S.2d at 187-88 (agreeing that broker "was not the alter ego or agent of"
funding lender); *Marshall*, 2014 WL 3361296 at \*4-5 (affirming grant of summary
judgment under FFA on claim that lender table-funded loan).

[5]    In the District Court, the Lombels claimed that the Office of Comptroller of
the Currency expressed concern that table funding can facilitate predatory lending
practices.  Memorandum In Opposition To Defendant's Motion To Dismiss (May
30, 2013) (Dkt. 34) at 1 n.1.  The assertion was overblown: the OCC letter they
cited was not specific to table-funding, and instead was general guidance
addressing "the need for national banks to exercise appropriate diligence when
they make or purchase loans that are originated through mortgage brokers or other
intermediaries."  OCC Advisory Letter 2003-3, at 1 (JA389).

affirmance is apparent in the record and blocks Plaintiff's vicarious liability claim against Flagstar.

B.    The District Court properly dismissed the Lombels' FFA claim, which is the only cause of action the Lombels have chosen to defend in this Court. The FFA "is very narrow in its scope: it applies only to mortgage brokers and the fees they charge borrowers." *Sweeney*, 879 A.2d at 1048-49. The statute regulates finder's fees that may be charged by a "mortgage broker," and imposes penalties for violations on a "mortgage broker" alone. The Lombels alleged that Davlaw was a broker that violated the FFA but filed suit against Flagstar, seeking to hold it derivatively liable for Davlaw's alleged FFA violations. However, because the FFA only imposes liability on mortgage brokers, the FFA claim against Flagstar was correctly dismissed.

The District Court applied well-settled Maryland law in rejecting the Lombels' effort to expand the scope of the statute to non-brokers, through some sort of derivative liability theory.

First, the Lombels claimed that Flagstar should be liable under the FFA because it conspired with Davlaw to violate the statute. Under Maryland law, however, a defendant may not be held liable for civil conspiracy unless the defendant was "legally capable" of committing the underlying violation alleged.

16

*Shenker*, 983 A.2d at 428.  The District Court properly held that Flagstar was not legally capable of violating the FFA, and properly rejected the conspiracy theory, because Flagstar was not the mortgage broker for their loan.  This Court squarely upheld the District Court's conclusion in *Marshall*, 2014 WL 3361296, at *4.

Second, the District Court correctly found that the Complaint failed to state a viable *respondeat superior* theory against Flagstar.  Agency liability does not exist in Maryland unless the plaintiff alleges that the agent had a fiduciary duty to act solely for the principal's benefit.  *Green v. H&R Block, Inc.*, 735 A.2d 1039, 1049 (Md. 1999).  The Complaint not only failed to allege such facts, but also pled facts directly contrary to this requirement, including alleging that Davlaw was Flagstar's "wholesale customer" and that Davlaw was acting independently to protect its own interests.  The Complaint failed to state an agency theory under Maryland law.

Third, the Lombels assert in this Court that Flagstar could be held liable for the broker's FFA violation under an aiding and abetting theory.  The Lombels never asserted that theory of FFA liability in their Complaint or in their briefing in the District Court.  They may not pursue it now for the first time on appeal.

C.      This Court can affirm the judgment on another ground that Flagstar raised below, but which the District Court had no occasion to reach.  The federal Home Owners' Loan Act, 12 U.S.C. 1461 §§ *et seq.* ("HOLA"), preempts state law

17

claims that significantly interfere with the lending activities of federal savings associations like Flagstar. The Lombels' FFA claim, if successful, would have that effect by interfering with Flagstar's ability to use mortgage brokers in originating loans. HOLA thus preempts the Lombels' FFA claim.

## **ARGUMENT**

### I.   **THIS COURT'S DECISION IN *PETRY* MANDATES AFFIRMANCE BECAUSE DAVLAW DID NOT VIOLATE THE FFA.**

This Court's decision in *Petry* requires affirmance because, under its holding, Davlaw could not have violated the FFA, and so Flagstar cannot be vicariously liable for Davlaw's alleged violation.

The FFA defines a broker as "a person who…[i]s not named as a lender in the agreement, note, deed of trust, or other evidence of the indebtedness." Md. Code Com. Law § 12-801(f); *see* Md. Code Fin. Inst. § 11-501(I). Following the statute's plain language, this Court held in *Petry* that "an entity that is named as the lender in the operative loan documents is categorically excluded from the definition of 'mortgage broker,' as that term is used in the Finder's Fee Act." 2014 WL 3361828 at *5. *Petry*, which was issued as Flagstar was finalizing this brief, thus affirmed dismissal of the claims in *Petry* because the loan documents identified Prosperity Mortgage as the lender, and so Prosperity Mortgage "was

18

incapable of violating the Finder's Fee Act in the manner alleged by the" plaintiffs. *Id.*

*Petry* is dispositive here.  It is undisputed that Davlaw was named as the lender in the Lombels' loan documents.  Complaint ¶ 29 (JA14) ("Davlaw is also identified as the 'lender' for this loan transaction on the Note… the Deed of Trust… and other loan documents").  Thus, Davlaw was not a mortgage broker. As in *Petry*, there was accordingly no FFA violation because the party that allegedly directly violated the FFA by charging finder's fees was not a "mortgage broker" subject to the FFA's prohibition on finder's fees.

Because Davlaw did not violate the FFA, there is no basis for imposing vicarious liability on Flagstar.  *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 420 (4th Cir. 2014) (no vicariously liability without direct liability).  Indeed, the plaintiffs in *Petry* sought to impose vicarious liability on other defendants there, but this Court affirmed dismissal of the claims against the other defendants because there was no underlying FFA violation. 2014 WL 3361828 at *7.

The absence of liability under the FFA is apparent in the record. Consequently, this Court can and should affirm on this ground.  *MM v. Sch. Dist.*, 303 F.3d 523, 536 (4th Cir. 2002).

19

## II.  THE LOMBELS CANNOT CLAIM ERROR WITH RESPECT TO A NONEXISTENT RULING ABOUT THE MEANING OF THE TERM "FINDER'S FEE" IN THE FFA.

The Lombels first seek reversal based on a straw man.  They assert that "[t]he District Court's dismissal of this case was based on its mistaken interpretation of the definition of 'finder's fee' under the FFA."  Br. 12.  They claim that "the District Court found that, as a matter of statutory interpretation, 'finder's fees' were limited to only redundant and excessive broker fees charged for work not actually performed – even though the plain statutory text (§ 12-801(d) of the FFA) includes no such limitation."  *Id*.  The Lombels then set forth a lengthy argument about the meaning of the term "finder's fee."  *Id.* at 15-21.[6]

The Lombels are wrong.  The District Court did not "base" its dismissal of Count One on an interpretation of the term "finder's fee."  Nowhere did it "f[i]nd, as a matter of statutory interpretation," what "finder's fee" meant.  Rather, the District Court dismissed Count One solely because it concluded that the Complaint failed to state a basis under Maryland law to hold *Flagstar* vicariously liable for Davlaw's alleged violations of the FFA.  Opinion at 7-11 (JA461-65).  Indeed, in

---

[6]      *See also id*. at 1 (issue presented for review is "[w]hether the definition of 'finder's fee' in the FFA . . . excludes fees for work actually performed by a mortgage broker").

denying the Lombels' motion to certify, the District Court stated that "my ruling does not require a determination as to whether the fees complained of by Plaintiffs are properly considered 'finder's fees' under the FFA." Opinion at 16 (JA470).

A party may not claim error about a ruling which a District Court never made. *Sapp v. Potter*, 413 F. App'x 750, 753 (5th Cir. 2011) ("this court cannot reverse a ruling that has not yet been made"). The Lombels' argument seeking reversal based on the meaning of the term "finder's fee" is irrelevant.

## III. THE DISTRICT COURT CORRECTLY DISMISSED THE FFA CLAIM BECAUSE THE COMPLAINT FAILED TO PLEAD A VIABLE THEORY OF VICARIOUS LIABILITY UNDER MARYLAND LAW.

Although the FFA limits liability for allegedly-illegal finder's fees strictly to "mortgage brokers," the Lombels decided not to file suit against Davlaw, the alleged mortgage broker they claim violated the statute. Instead, they sued only Flagstar, which they admit was not a mortgage broker, asserting that Flagstar should be liable for Davlaw's violations.

After the District Court dismissed the entire case, the Lombels have chosen to appeal only one claim – their cause of action against Flagstar under the FFA. The Court should affirm the dismissal because as a matter of law Flagstar cannot be held liable – directly or derivatively – under the FFA and because, even if

21

derivative liability is legally possible, the Complaint did not allege facts on which

such liability could be based under Maryland law.

### A.    The Maryland General Assembly Did Not Authorize Any Vicarious Liability For FFA Violations.

Flagstar sought dismissal of the FFA claim because the statute does not

impose vicarious liability on third parties if brokers charge illegal finder's fees.[7]

The District Court had no need to address this argument because it found that the

Lombels had not sufficiently pled either conspiracy or agency theories of liability

under Maryland law.  But this Court should reach the issue and affirm because no

lender can be sued for violation of the FFA.

It is well-settled that the Maryland General Assembly has exclusive power to

prescribe illegal conduct by statute and to specify who can be liable for statutory

violations.[8]  As a result, when a statute "is precise about who can be liable courts

should not implicitly read secondary liability into the statute."  *Freeman v.*

---

[7]    Memorandum in Support of Flagstar's Motion to Dismiss (Apr. 12, 2013) (Dkt. 22-1) ("MTD") at 12-16 (JA119-23); Reply Brief in Support of Flagstar's Motion to Dismiss (June 27, 2013) (Dkt. 40) ("Reply'") at 4-11.

[8]    *Ritchie v. Donnelly*, 597 A.2d 432, 447 (Md. 1991); *Franklin v. Mazda Motor Corp.*, 704 F. Supp. 1325, 1331 (D. Md. 1989)).

*DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006). Courts are bound by decisions made by the legislature about who can be held liable for statutory violations.[9]

The plain language of the FFA is dispositive. Section 12-804(e), which the Lombels allege was violated, governs only the fees that a "mortgage broker" may charge, and the penalty provision is limited to "[a]ny mortgage broker" who violates the Act. Md. Code Com. Law § 12-807. The rest of the FFA defines both brokers and lenders (*see id.* § 12-801(e), (f)), and mentions lenders in several provisions (*id.* §§ 12-803, 12-804(e), 12-805(c)), so the General Assembly understood that loan transactions involving brokers also involve lenders. It chose to impose liability only on "brokers," however. *Sweeney*, 879 A.2d at 1048-49 (FFA "is very narrow in its scope: it applies only to mortgage brokers and the fees they charge borrowers").

Because the plain language is clear, courts may not permit liability the legislature chose not to impose. *Fister v. Allstate Life Ins. Co.*, 783 A.2d 194, 205 (Md. 2001) ("It is the province of the State Legislature, not the courts, to expand the scope of [a statute]."); *Dorsey v. State*, 968 A.2d 654, 676 (Md. Ct. Spec. App. 2009) (declining to "expand the scope of [statute] to include the Fire Marshal"). In

---

[9]    *MEMCO v. Maryland Emp't Sec. Admin.*, 375 A.2d 1086, 1094 (Md. 1977) ("Court cannot undercut the legislature's directive" set forth in statute).

other words, when "a statute is specific as to who may be liable, courts have found that the express statutory language controls the scope of liability." *City of New York v. Milhem Attea & Bros., Inc.*, 2009 WL 701005, at *4 (E.D.N.Y. Mar. 11, 2009); *accord Freeman*, 457 F.3d at 1006.[10] Here, the FFA is not merely silent on vicariously liability:  it specifies who may be liable – "mortgage brokers" – not lenders or other third parties who may have business dealings, or even an agency relationship, with brokers.[11]  The FFA's plain language ends the inquiry – the Lombels cannot impose liability on Flagstar for violations allegedly committed by Davlaw.  *See also, e.g.*, *Central Bank of Denver v. First Interstate Bank*, 511 U.S. 164, 175 (1994) ("the statutory text controls the definition of conduct covered by" statute);  *Glaser v. Enzo Biochem, Inc.*, 126 F. App'x 593, 599 (4th Cir. 2005) (Congress did not provide for civil conspiracy liability in Section 10(b) of Securities Exchange Act).

---

[10]    Federal courts are especially wary of imposing liability in ways state courts have not.  *Hairston v. Multi-Channel TV Cable Co.*, 79 F.3d 1141 (table), 1996 WL 119916, at *3 (4th Cir. 1996).

[11]    The absence of vicarious liability under the FFA is similar to 15 U.S.C. § 1692k (part of the Fair Debt Collection Practices Act), which allows liability only on a "debt collector."  *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) ("[i]ndividuals who do not otherwise meet the statutory definition of 'debt collector' cannot be held liable under the Act"); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) (same).

24

Although more is not needed, other indicia of legislative intent make clear that the Maryland General Assembly did not intend to allow vicarious liability for FFA violations.  For example, although the FFA protects consumers, the Lombels seek to impose liability against Flagstar under a penalty provision,[12] and so courts must give it "a strict construction"  because such provisions "are intended as enforcement measures only and are not intended to be compensatory."  *Fisher v. Bethesda Discount Corp.*, 157 A.2d 265, 268 (Md. 1960).  Extending liability beyond mortgage brokers to lenders and other third-parties is not a strict construction of the FFA.

Courts also must avoid statutory interpretations that would lead to adverse consequences,[13] and the Lombels' interpretation of the FFA would do just that. The entire Act governs the actions of mortgage brokers, the relationship between a mortgage broker and the borrower, and the fees charged by the mortgage broker to the borrower for services performed in connection with the loan.  A ruling that third-parties can be liable under the FFA would expose them to treble damages and force them to defend practices with which they were not involved, and could limit

---

[12]    A mortgage broker must "forfeit" the greater of $500 or "[t]hree times the amount of the finder's fee collected."  Md. Code Com. Law § 12-807.

[13]    *Rogan v. Baltimore & Ohio R.R., Co.*, 52 A.2d 261, 266 (Md. 1947).

access to mortgage loans in Maryland by discouraging lenders from working with mortgage brokers. It would be especially unfair in circumstances like those here, where the Complaint does not allege Flagstar had any interactions with the Lombels at all.

Finally, the Maryland General Assembly knows how to impose vicarious liability in a statute,[14] including in statutes governing lending matters.[15] It chose in the FFA to impose liability solely on mortgage brokers, a decision that binds both the Lombels and the courts. *Jones v. Baltimore City Police Dep't*, 606 A.2d 214, 218 (Md. 1992).[16]

---

[14] Md. Code, Cts. & Jud. Proc. § 5-805 ( provider "shall be liable … for the negligent acts or omissions of . . . provider *or its agents*"); Md. Code, Bus. Reg. § 14-227 ("Joint and several liability under this section extends to … each person who ***directly or indirectly controls a person*** liable under this section"); Md. Code, Cts. & Jud. Proc. § 3-504 ("An owner, licensee, or operator of a television or radio station or network of stations ***and his agents*** or employees may be liable for a defamatory statement published or uttered over the facilities of the station"); Md. Code, State Gov't § 20-801(1) (expressly authorizing liability for aiding and abetting); Md. Code, Nat. Res. § 5-409(a) (same); Md. Code, Lab. & Empl. § 3-915 (same); Md. Code, Ins. § 27-204 (same) (emphases added).

[15] Md. Code, Com. Law § 12-636 ("Any person who knowingly violates ***or participates in the violation*** of any provision"); Md. Code, Fin. Inst. § 11-523(b) ("Any unlicensed person … who ***makes or assists a borrower*** in obtaining a mortgage loan"); *id.* § 11-523(c) ("Any mortgage lender or employee ***or agent of a mortgage lender*** who willfully misappropriates") (emphases added).

[16] *Compare EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-81 (7th Cir. 1995) (Congress defined employer to include "any agent" of employer "to

26

The FFA "is very narrow in its scope" and "applies only to mortgage brokers," *Sweeney*, 879 A.2d at 1048. The Maryland General Assembly chose not to permit imposition of vicarious liability against Flagstar – a decision that alone mandates affirmance of the judgment of dismissal.

### B. The District Court Properly Rejected The Lombels' Derivative Liability Theories.

Even if Plaintiffs could pursue vicarious liability against Flagstar for violations of the FFA allegedly committed by Davlaw, the District Court properly dismissed the FFA claim because it correctly held that the Complaint failed to allege a theory of derivative liability cognizable under Maryland law.

#### 1. Marshall *Rejects Plaintiffs' Theory That Flagstar Can Be Liable For Conspiracy To Violate The FFA.*

The Lombels alleged that Flagstar should be liable for FFA violations committed by Davlaw because Flagstar conspired with Davlaw to violate the statute. Complaint at ¶¶ 49-60, 89, 91 (JA18-22, 29-31). The District Court rejected this theory because Maryland law forbids conspiracy liability against a defendant unless it is legally capable of committing the underlying violation, and

---

ensure that courts would impose *respondeat superior* liability upon employers for the acts of their agents"); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510-11 (4th Cir. 1994) (statute contains "unremarkable expression of respondeat superior — that discriminatory personnel actions taken by an employer's agent may create liability for the employer").

because Flagstar was not capable of violating the finder's fee prohibition in the FFA. Opinion at 8-9 (JA462-63). The Court correctly applied Maryland law and the plain language of the FFA, as this Court recently held in *Marshall*, which squarely rejects the Lombel's arguments for imposing conspiracy liability on Flagstar. 2014 WL 3361296, at *4.

The District Court correctly held that settled Maryland law of conspiracy controls this case. In *Shenker v. Laureate Education, Inc.*, 983 A.2d 408 (Md. 2009), the Maryland Court of Appeals held that "a defendant may not be adjudged liable for civil conspiracy unless that defendant was *legally capable* of committing the underlying tort alleged." *Id.* at 428 (emphasis added). *Shenker* involved a cash-out merger of a Maryland corporation by two directors and private investors. Certain shareholders filed suit alleging that the directors breached their fiduciary duties by failing to obtain the best price for the shares, and that the private investors conspired with the directors. 983 A.2d at 413. When the private investors were sued, the conspiracy claim was dismissed because they owed no fiduciary duties to the shareholders and thus were not "legally capable" of committing the underlying breach of fiduciary duty. *Id.* at 429. While the investors may have assisted the directors in breaching duties, the Maryland Court

28

of Appeals held, "[b]ecause Investor Respondents owed no fiduciary duty to [plaintiffs], they may not be held liable for civil conspiracy." *Id.*

Relying on *Shenker*, the District Court held that "because Defendant cannot have committed the underlying violation of the FFA, it also cannot be liable for conspiring to do so." Opinion at 8 (JA462). This conclusion flowed ineluctably from the plain language of the FFA itself. The Maryland Court of Appeals has admonished that the FFA "is very narrow in its scope: it applies only to mortgage brokers and the fees they charge borrowers." *Sweeney*, 879 A.2d at 1048-49. The provision the Lombels allege Davlaw violated is directed only at a "mortgage broker":

> A *mortgage broker* may not charge a finder's fee in any transaction in which the mortgage broker or an owner, part owner, partner, director, officer, or employee of the mortgage broker is the lender or an owner, part owner, partner, director, officer, or employee of the lender.

Md. Code, Com. Law § 12-804(e) (emphasis added). As the District Court recognized, "this is a restriction on the conduct of *brokers* only, not on lenders who are not brokers." Opinion at 8 (JA462) (emphasis in original).[17] Under *Shenker*,

---

[17]    The General Assembly chose to make mortgage brokers, and only mortgage brokers, liable for statutory violations: "Any *mortgage broker* who violates any provision of this subtitle shall forfeit" three times the finder's fee collected or $500. Md. Code, Com. Law § 12-807 (emphasis added).

as the court concluded, the Complaint could not support a conspiracy theory of liability because it alleged that Davlaw – not Flagstar – was the mortgage broker for the loan.  Indeed, Flagstar did not meet the definition of a mortgage broker under the statute.[18]

Indeed, this Court affirmed dismissal of an identical FFA claim brought because a funding lender who was not a mortgage broker could not be legally capable of violating the FFA.  *Marshall*, 2014 WL 3361296 at *4.  In that case, plaintiff William Marshall alleged that a funding lender, James B. Nutter & Company, had conspired with an alleged mortgage broker, Savings First, in violation of the FFA.  *Id.* at *1.  This Court affirmed dismissal of the conspiracy claim:

> We conclude that the district court correctly applied *Shenker* to Marshall's civil conspiracy claim against Nutter. Marshall sought to hold Nutter liable for conspiring with Savings First and other mortgage brokers to violate § 12–804(e), which prohibits mortgage brokers from charging finder's fees in any transaction in which they

---

[18]    The FFA defines a "mortgage broker" by reference to Section 11-501(j)(1)(i) of the Financial Institutions Article.  *Id.* § 12-801(f).  That provision defines a 'broker' as a person who "[f]or a fee or other valuable consideration, whether received directly or indirectly, aids or assists a borrower in obtaining a mortgage loan."  Md. Code, Fin. Inst. § 11-501(i)(1).  The Complaint does not allege that Flagstar received "a fee or other valuable consideration" from the Lombels, or that Flagstar "aid[ed] or assist[ed]" the Lombels in obtaining a mortgage loan.

30

are also the lender. This provision imposes a duty only on mortgage brokers, and therefore only mortgage brokers are capable of violating it. Since it is uncontested that Nutter was not functioning as a mortgage broker but, as Marshall alleged in his complaint, as the "funding lender," Nutter was not legally capable of violating § 12–804(e) and therefore, under *Shenker*, cannot be held liable for conspiring to violate § 12–804(e).

*Id.* at *4. *Marshall* is dispositive, squarely rejects the Lombels' conspiracy theory, and mandates rejection of the Lombel's attack on the District Court's ruling.

As in *Marshall*, the Lombels try to obtain reversal by misstating the District Court's decision. They claim that the District Court misunderstood *Shenker* by dismissing the conspiracy claim "on the basis that Flagstar did not directly violate the statute"; they claim instead that a person is "legally capable" of committing an underlying violation if "a defendant has the capacity to ***possibly*** do something – not that the defendant actually did something." Br. 21-22, 24 (emphasis in original).

The Lombels made the same argument below. The District Court noted that the Lombels had "mischaracterized" *Shenker* by seeking to impose a limitation which the Maryland Court of Appeals had not imposed: "namely a limitation of civil conspiracy liability to parties that have 'directly violat[ed] the statute.'" Opinion at 8 (JA462). The District Court recognized that the Lombels were raising a "straw man" – the "obvious point that a defendant may be liable for civil

31

conspiracy even where it has not directly violated a statute" – and were advancing "the bewilderingly circular argument that the possibility that a defendant could be held liable for civil conspiracy without directly violating a statute is the same thing as being 'legally capable' of violating that statute."  *Id*. at 8-9 (JA462-63).

Rather than hold that conspiracy liability was unavailable because Flagstar did not directly violate the FFA, however, the District Court instead properly held that "the crucial question for civil conspiracy liability is whether a defendant could be subject to liability had he committed the underlying action, not whether he committed that action."  Opinion at 9 (JA463) (citing *Shenker*, 983 A.2d at 428). Because Flagstar was not alleged to be the mortgage broker for the transaction, it could not be subject to liability under the FFA even if it had assessed finder's fees in connection with the Lombels' loan, and so was not "legally capable" of violating the FFA under *Shenker*.  This holding was plainly correct.

The Lombels nevertheless cite several cases for the proposition that "civil conspiracy liability extends beyond direct perpetrators of the underlying wrong." Br. 27-30.  All pre-date *Shenker*, and none mention the "legally capable" requirement, or involve situations where defendants were held liable for conspiracy

despite not being legally capable of violating a statute;[19] two of the cases are

generally consistent with *Shenker*'s limitation on conspiracy liability.[20]  Whatever

the law was before *Shenker,* that case's "legally capable" requirement is binding on

the Lombels and on the federal courts.  Because Flagstar could not have violated

the FFA in the Lombels' loan transaction, it cannot be liable under the FFA for

conspiracy to violate the statute under *Shenker*.

The Lombels next argue that conspiracy liability should be imposed on

Flagstar for the Lombels' loan because Flagstar could have acted as a mortgage

broker in the loan or in another, hypothetical transaction.  Br. 24-25 ("There is no

disputing that [Flagstar *can* act as a mortgage broker") (emphasis added).  This

Court rejected that argument in *Marshall*.  2014 WL 3361296, at *4. ("But the fact

that Nutter could *hypothetically* act as a mortgage broker in some transaction and

---

[19]    *Etgen v. Washington County Bldg. & Loan Ass'n*, 41 A.2d 290, 291-92 (Md.
1945) (discussing conspiracy liability for participating in fraudulent scheme);
*Mackey v. Compass Marketing, Inc.*, 892 A.2d 479 (Md. 2006) (addressing
conspiracy as basis for jurisdiction over companies and their directors); *Fisher v.
McCrary Crescent City, LLC*, 972 A.2d 954, 988 (Md. Ct. Spec. App. 2009)
(discussing conspiracy to defraud plaintiff).

[20]    *Robertson v. Parks*, 24 A. 411, 413 (Md. 1892) ("a conspiracy cannot be
made the subject of a civil action, unless something is done which, without the
conspiracy, would give a right of action"); *Manikhi v. Mass Transit Admin.*, 758
A.2d 95, 110 (Md. 2000) (affirming dismissal of conspiracy claim against state
agency because state agency could not be liable "if it were the sole defendant").

33

then be bound by § 12–804(e) is irrelevant.") (emphasis original).  The District Court was thus correct to reject this argument as "wholly misrepresent[ing] the law."  Opinion at 9 n.5 (JA463).  The issue as to liability is not whether the defendant was legally capable of violating the statute in some circumstances; it is whether the defendant was capable of a violation in the circumstance at issue.  *Id.*; *see also Petry*, 924 F. Supp. 2d at 647.  There is no dispute that Flagstar was not a mortgage broker within the meaning of the FFA for the Lombels' transaction, and so was not legally capable of violating the FFA under *Shenker*.[21]

Putting aside the Lombels' distortion of the holding, *Shenker* simply held that any non-direct perpetrator of a wrongful act can be liable in conspiracy only if it had the legal capacity to commit the underlying wrongful act that forms the basis for the suit.[22]  The Lombels cite no case where a defendant was held liable in

---

[21]    It is also worth noting that the Complaint does not allege Flagstar ever acted as a mortgage broker anywhere, let alone in Maryland or in this transaction.  To the contrary, it repeatedly asserts that Flagstar was "funding lender."  *E.g.*, Complaint ¶¶ 6, 24, 25, 31, 33, 52, 57 (JA10, 13-15, 20-21).

[22]    *BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 409 (D. Md. 2001) ("A cause of action for civil conspiracy may therefore not arise if the alleged conspirator, though allegedly a participant in the agreement underlying the injury, was *not personally bound by the duty* violated by the wrongdoing") (emphasis added); *Bahari v. Countrywide Home Loans*, 2005 WL 3505604, at *6 (D. Md. Dec. 16, 2005) (coconspirator not legally capable of committing underlying wrong where plaintiff "failed to allege any duty owed" by coconspirator to plaintiff); *George*

conspiracy under Maryland law based on its hypothetical capacity to commit a

wrong in some other transaction.

The Lombels' argument, if accepted, would negate *Shenker* and render its

"legally capable" requirement meaningless. Under the Lombels' proposed

approach, a plaintiff could impose liability by conjuring up a hypothetical situation

in which the defendant *could* have had a duty to some *other* plaintiff in some *future*

set of circumstances, regardless of what the defendant's *actual* duty was to *that*

*plaintiff* in the facts with respect to *her claim*. *Shenker* forecloses this unusual

approach. *See Farwell v. Story*, 2011 WL 2359622, at *4 (D. Md. June 8, 2011)

(appraisal company not legally capable of committing underlying torts of fraud and

constructive fraud because it did not owe duty of care to borrower under facts

alleged; court did not address whether appraisal company could have owed a duty

of care under different facts); *Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905

F. Supp. 2d 675, 696 (D. Md. 2012) (automobile dealers not legally capable of

violating Maryland statute setting duties owed by automobile manufacturer to

dealers); *In re Minh Vu Hoang*, 2012 WL 195316, at *5 (Bankr. D. Md. Jan. 23,

---

*Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 14 A.3d 1193,
1220-21 (Md. Ct. Spec. App. 2011) (conspiracy claim fails without "any other
underlying tort, such as breach of fiduciary duty owed by [defendants] directly to
[plaintiffs]").

35

2012) (defendants not legally capable of violating the Maryland Fraudulent Transfer Act because, in that case, they were not transferees or transferors of property). As controlling Maryland law requires, the District Court correctly relied on *Shenker* to discuss the FFA claim to the extent it was based on a conspiracy theory of recovery.

The Lombels also assert that the legislative history of the FFA shows that the General Assembly intended "to prohibit the very kind of collusion or conspiracy" that allegedly occurred between Davlaw and Flagstar here. Br. 30. The argument provides no basis for reversal for multiple reasons.

The plain language of the FFA forecloses the Lombels' position. Whatever the legislative motives in passing the statute, the Maryland General Assembly chose in Sections 12-804(e) and 12-807 not to authorize conspiracy liability, or to penalize lenders, but rather to unambiguously limit liability for FFA violations just to mortgage brokers. The statutory text ends the inquiry: "no further sleuthing of statutory interpretation is needed." *Md. Econ. Dev. Corp. v. Montgomery County*, 64 A.3d 478, 490 (Md. 2013). As the Maryland Court of Appeals made clear, Section 12-804 "applies only to mortgage brokers and the fees *they* charge borrowers." *Sweeney*, 879 A.2d at 1048-49 (emphasis added).

36

Even if legislative history could be cited in an attempt to create liability under the FFA where none was enacted, the Lombels present no statements by legislators, committee reports, or other tangible evidence that the General Assembly passed Sections 12-804(e) or 12-807 to "prohibit…collusion or conspiracy between brokers and lenders," or impose liability on persons other than a "mortgage broker."  Br. 30.  The best they do is to cite *Coner v. Morris S. Berman Unlimited, Inc.*, 501 A.2d 458 (Md. Ct. Spec. App. 1985), which described the FFA as "prohibit[ing] a lender from collecting more than the interest or other remuneration that the law allows by collecting as well a finder's fee for simply introducing himself to the borrower."  *Id.* at 463.  In *Coner*, however, the finder's fee was impermissible because it was charged by a person who was acting as a broker – and also as the lender.  501 A.2d at 460 (lender was husband of owner of brokerage company, and was effectively the agent of and person behind the brokerage company).  *Id.*  Here, Flagstar was not the broker for the loan nor did it have any ownership interest in Davlaw.[23]  Thus, *Coner* does not apply here.

---

[23]    *Coner* also cited, and the Lombels reprint, an excerpt from *Andrews v. Poe*, 30 Md. 485 (1869).  Br. 31.  The excerpt has no application here, as it discussed Maryland's *usury* laws, which regulate lenders and the interest rates and fees that they can charge.

37

The Lombels also speculate about the General Assembly's intent in rejecting a proposed amendment to the FFA that would have exempted table-funded loans from the statute's reach.  Br. 32.  But a bill's failure to pass is a "weak reed upon which to lean in ascertaining legislative intent."  *City of Baltimore Dev. Corp. v. Carmel Realty Assocs.*, 910 A.2d 406, 424 (Md. 2006); *see also NCR Corp. v. Comptroller of the Treasury, Income Tax Div*., 544 A.2d 764, 767 (Md. 1988) ("[L]egislative intent cannot be inferred solely from failure of a bill").[24]  In any event, the Lombels' speculation about what the FFA could have become is beside the point, because at no point did the FFA (or proposed legislation) address conspiracy liability for lenders.[25]  Moreover, the Lombels get the implication of the legislative action backwards:  the General Assembly's refusal to ***shrink*** the scope of the FFA's prohibition (through a table-funding exemption for brokers) is not evidence of  intent to ***expand*** the provision (to hold non-mortgage brokers liable).

---

[24]     Neither case cited by the Lombels supports placing significant weight on failed bills.  *Demory Bros. v. Bd. of Pub. Works*, 316 A.2d 529, 533 (Md. Ct. Spec. App. 1974) (rejection of an amendment was third of three factors bearing on legislative intent); *Madden v. Bhd. & Union of Transit Emps.*, 147 F.2d 439, 443-44 (4th Cir. 1945) (considering House and Senate reports, noting rejection of an amendment, and quoting from a floor debate).

[25]     H.B. 1323 (JA220-221) would have removed the words "the lender or" from Section 12-804(e), while the other bills (H.B. 674 and S.B. 451 (JA223-27)) would have altered the definition of "finder's fee" to exclude compensation paid to the mortgage broker in a table-funded transaction.

*State Ethics Comm'n v. Evans*, 855 A.2d 364, 372 (Md. 2004) (refusal to exempt individual from reach of statute "does not translate to an affirmative intent to *include* him").

In sum, there is no basis in the FFA to not apply the *Shenker* rule to conspiracy liability under these circumstances. The District Court's rejection of any alleged conspiracy liability should be affirmed.

> **2.    *The District Court Correctly Held That The Complaint Failed To Allege Any Basis For Principal-Agency Liability Under The FFA.***

As an alternative theory of derivative FFA liability, the Lombels asserted that Flagstar should be held liable for Davlaw's supposed violation of the FFA because Davlaw was Flagstar's agent. Br. 47-54. Considering this theory on its face, the District Court held that the Complaint failed to state a claim because it did not plead facts showing that Davlaw was Flagstar's agent under Maryland law. Opinion at 9-11 (JA463-65). The Court correctly followed Maryland law in this regard, and so this Court should affirm.

39

### a.    *The Complaint Failed To Allege That Davlaw Owed A Fiduciary Duty To Flagstar.*

The District Court rejected the Lombels' assertion that Davlaw was Flagstar's agent because they did not allege facts that, if proven, would show that Davlaw had accepted agency duties to Flagstar.

At the core of any agency relationship is a consensual, fiduciary duty between principal and agent. *Green*, 735 A.2d at 1049 ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."). The agent's fiduciary duty includes acting "solely for the benefit of the principal in all matters connected with his agency," and with "loyalty to the interest of his principal and the need to avoid any conflict between that interest and his own self-interest." *Id.* at 1055.

Despite this bedrock element of any agency, the Complaint did not allege that Davlaw had such a duty to Flagstar. Rather, attempting to satisfy this requisite part of an agency relationship, the Complaint asserted only generally that the "mortgage brokers/lenders had a duty to act primarily for the benefit of Flagstar in the transactions of [the Lombels] and the Class." Complaint ¶ 42 (JA17). But, as the District Court recognized, "the only fact to support this conclusion is that Davlaw was 'soliciting the mortgage loans . . . solely for assignment to Flagstar,

40

and did not solicit other lenders for these transactions.'"  Opinion at 10-11 (JA464-65) (quoting Complaint ¶ 42).  This allegation, the Court observed, "falls far short of alleging *any* duty owed by Davlaw, much less a duty to act for the benefit of Defendant."  *Id.*

The District Court properly found that the Complaint alleged no basis for finding that Davlaw had a fiduciary duty to Flagstar under Maryland law – and so there were no grounds for any alleged principal-agent liability.  The Lombels' assertion that Davlaw owed a fiduciary duty to Flagstar because it decided to sell all the loans it originated to Flagstar, does not show that Davlaw had a duty to act on Flagstar's behalf and in Flagstar's interest.  For all that appears, Davlaw could have chosen to make loans through Flagstar for various business reasons entirely unrelated to a duty, including better pricing and convenience, or could have changed its mind at will and brought its loans to Flagstar's competitors.  There were no allegations suggestive of anything other than an ordinary commercial relationship between two independent companies, akin to that of supplier and purchaser.  Indeed, the Lombels attached to their Complaint (and thus made part of their allegations) Flagstar's Table Funding Request Form for their loan; it did not indicate that Davlaw had a duty to sell loans to Flagstar, and instead provided that Davlaw was a "Wholesale Customer[]" of Flagstar.  Exhibit 2 to Complaint

41

(JA53).  The Complaint does not anywhere allege that Davlaw was duty-bound to sell even a single loan to Flagstar or that the loans it did sell had to be created solely with Flagstar's (rather than Davlaw's) economic interest in mind.  Selling loans as a wholesale customer does not create an agency relationship under Maryland law.  *See Integrated Consulting Servs., Inc. v. LDDS Commc'ns, Inc.*, 1999 WL 218740, at *6 (4th Cir. Apr. 15, 1999) (no agency relationship where alleged agent solicited customers for alleged principal in exchange for a portion of the revenue generated; "[alleged agent's] proclamations of agency status do not support the existence of an agency relationship").[26]

Indeed, the Complaint is defective for its related failure to plead facts to show that Davlaw agreed to act "solely for the benefit of the principal [Flagstar] in all matters connected with his agency" and with "loyalty to the interest of his principal [Flagstar] and the need to avoid any conflict between that interest and his

---

[26]     *See also Harmon v. BankUnited*, 2009 WL 3487808, at *4 (D. Md. Oct. 22, 2009) (no duty or agency relationship pled; "[i]nstead, the complaint shows that [the alleged table-funding agent] was part of a 'network of mortgage brokers' employed by BankUnited"); *Jackson v. 2109 Brandywine, LLC*, 952 A.2d 304, 323 (Md. Ct. Spec. App. 2008) (trial court erred by inferring agency relationship "solely from the actions of" alleged agent); *Proctor v. Holden*, 540 A.2d 133, 142 (Md. Ct. Spec. App. 1988) (broker did not become agent of buyers merely because broker unilaterally helped buyers "by finding houses for them to view").

42

own self-interest." *Green*, 735 A.2d at 1055. Rather, in a moment of candor, the

Lombels alleged that "[t]he mortgage broker/lenders had independent personal

stakes" in their relationships with Flagstar, and that each broker has its own

"financial, economic interest." Complaint ¶ 55 (JA20). The Lombels accordingly

pled that Davlaw acted at least in some respects for its own benefit, not Flagstar's

– allegations that doomed their effort to plead that the parties had an agency

relationship. *Integrated Consulting Servs., Inc.,* 1999 WL 218740, at *5 (no

agency relationship where alleged agent acted for own benefit); *Homa v. Friendly*

*Mobile Manor, Inc.*, 612 A.2d 322, 334-35 (Md. Ct. Spec. App. 1992) (no agency

relationship; alleged agent was "acting on behalf of himself"); *White v. Bank of*

*America*, 2013 WL 3944442, at *4 n.2 (D. Md. July 30, 2013) (defendant "acted at

closing for its own benefit, not for" plaintiff's); *Fare Deals Ltd. v. World Choice*

*Travel.Com, Inc.*, 180 F. Supp. 2d 678, 685-86 (D. Md. 2001) (dismissing

vicariously liability theory; alleged agents act "primarily for their own benefit, not

for the benefit of [the alleged principal], just as does a buyer of goods who . . . is

not his seller's agent").[27]

---

[27]    Flagstar submitted below a copy of a complaint in which Davlaw was sued
for a loan it sold to a lender *other* than Flagstar. Exhibit 1 to Reply. Although the
District Court did not rely on the complaint in its decision (Opinion at 11 n.6

The Lombels attack the District Court's straightforward ruling by asserting that the District Court wrongly believed that the *Green* factors for determining agency were "hard-and-fast," and that "a principal's right of control over an agent can be shown in a number of different ways." Br. 48, 49. This argument is a straw man, as the District Court never said that the factors were unyielding. That it did apply those factors was not error, because the three-part test in *Green* is the law of Maryland.

The Lombels next complain that in finding no fiduciary duty had been pled, the District Court improperly focused only on Paragraph 42 of their Complaint; the Lombels now point this Court to seven other paragraphs that they believe support their position. Br. 49-52 (citing Complaint ¶¶ 28-30, 33-34, 36-37). The Lombels cited none of these seven paragraphs to the District Court in opposing Flagstar's motion to dismiss, however. Memorandum in Opposition to Defendant's Motion to Dismiss at 26-27. They cannot resurrect their agency claim for the first time by changing their arguments on appeal.[28]

_____

(JA465), this public document shows that the allegation by the Lombels that Davlaw sold all its loan to Flagstar was factually untrue.

[28]    *Zornes v. Specialty Industries, Inc.*, 166 F.3d 1212 (Table), 1998 WL 886997, at *7 n.10 (4th Cir. 1998) (precluding appellants from supporting statutory claim with facts not cited in district court; "[d]istrict courts are not required 'to

44

In any event, none of the newly-cited paragraphs support the assertion that

Davlaw had a fiduciary duty to act on behalf of Flagstar under Maryland law:

- Paragraphs 28  and 33 allege that Davlaw acted as their mortgage broker and that they paid fees to Davlaw at closing.  These allegations show at most that Davlaw acted on behalf of the Lombels, not Flagstar.[29]

- Paragraph 29 alleges that Davlaw is identified as the "lender" in loan documents.  The designation does not demonstrate any duty to Flagstar.

- Paragraphs 30, 33-34, 36 and 37 allege that Flagstar provided certain documents to be used in connection with the loan, had some kind of behind-the-scenes review of the loan process, and was the ultimate purchaser of the loan.  The allegations do not show that Davlaw had any legal duty to act on Flagstar's behalf.  Rather, they are at best somewhat inconsistent with a finding of any fiduciary duty, for Flagstar would not have reviewed and approved Davlaw's actions had Flagstar believed Davlaw undertook to act in Flagstar's interest.

---

anticipate all arguments that clever counsel may present in some appellate future. To do so would … strain judicial resources"); *Rentokil, Incorporated-Tropical Plant Servs. v. Creative Plantscapes, Inc.*, 202 F.3d 259 (Table), 1999 WL 1092641, at *3-4 (4th Cir. 1999) ("Rentokil never characterized [the] statement as a judicial admission in district court . . . Accordingly, Rentokil has waived this argument because it did not raise it below"); *Anderson v. Discovery Communications, LLC*, 517 F. App'x 190, 194 n.6 (4th Cir. 2013) ("Anderson raises for the first time her diagnosis of anxiety as a basis for an ADA claim. Given her failure to raise it to the district court, we need not address this claim either"); *cert. denied*, 134 S. Ct. 1009 (2014).

[29]    *Harmon*, 2009 WL 3487808, at *4 n.18 ("[T]he mortgage broker, is presumed to be acting as an agent for the Harmons, the mortgagors, not for BankUnited, the mortgagees").

The Lombels claim these facts show that "Flagstar exercised control over the ultimate objective of the agency relationship." Br. 51-52. But, control over the putative agent is a different prong of the three-part test, which the District Court found had been *properly pled*. What was missing, instead, were allegations of fact to support the separate element that Davlaw had a fiduciary duty to Flagstar. Absent those allegations, the agency theory foundered under Maryland law.

Finally, the Lombels claim that that a duty can be found in their allegations in Paragraphs 38-48 of the Complaint (Br. 53), but the only one of those allegations that deals with a duty is Paragraph 42, which briefly alleged that Davlaw solicited loans solely for sale to Flagstar. The District Court reviewed this allegation, accepted it as true, and correctly concluded that the fact that Davlaw sold loans only to Flagstar did not mean that Davlaw had any legal duty to do so. *See Affordable Communities of Missouri v. Federal Nat'l Mortg. Ass'n*, 714 F.3d 1069, 1074 (8th Cir. 2013) (no agency relationship where complaint pled that Fannie Mae purchased loans from originating lender but did not allege Fannie Mae was obligated to purchase loans); *Chase Manhattan Mortg. Corp. v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A.*, 694 So. 2d 827, 833-34 (Fla. Dist. Ct. App. 1997) (no agency; "Abbey was always free to make mortgages under different standards and sell that paper elsewhere [other than Chase]. Abbey was

46

obligated to enter into no transactions with Chase, save for those it willingly undertook"); *Carson v. McNeal*, 375 F. Supp. 2d 509, 515-16 (S.D. Miss. 2005) ("[T]he fact that Provident pre-approved the loans in anticipation of purchasing the loans following closing does not render Provident" vicariously liable where alleged agent "was an independent lender, whose relationship with Provident … was that of buyer and seller, not principal and agent."); *Ocwen Loan Servicing, LLC v. Branaman*, 554 F. Supp. 2d 645, 651 (N.D. Miss. 2008) (no agency; "Delta Funding Corporation was an independent lender, whose relationship with Wells Fargo was that of buyer and seller, not principal and agent"). The allegations also failed to show that Davlaw had any duty to make sure those loans served only Flagstar's interests.

Without a binding legal duty between two parties, an agency relationship does not exist.[30] Because the Complaint nowhere alleged such a duty running between Davlaw and Flagstar, the District Court correctly held that the Lombels could not sue Flagstar for an FFA violation based on a principal-agent theory.

---

[30] *Terry v. SunTrust Banks, Inc.*, 493 F. App'x 345, 355-56 (4th Cir. 2012) (no agency relationship; party with contractual obligations did not "become a fiduciary under agency law" because "[s]uch obligations do not automatically create fiduciary relationships"); *Brooks v. Euclid Sys. Corp.*, 827 A.2d 887, 901 (Md. Ct. Spec. App. 2003) (no agency relationship where there was no duty to act primarily for the alleged principal's benefit).

### b.    The Complaint Failed To Plead Facts Showing Davlaw Had Power To Alter Flagstar's Legal Relations.

In the District Court, Flagstar also argued that the agency theory should be rejected because the Complaint failed to allege facts showing that Davlaw had power to alter Flagstar's legal relations, another requirement for imposing liability on a principal under Maryland law.  MTD at 18-19 (JA125-126); Reply at 15. Because it disposed of the Lombel's agency theory based on lack of facts showing that Davlaw owed a duty to Flagstar, the District Court had no occasion to address this argument.  It provides an independent reason to affirm the Court's rejection of this theory.

A principal-agent relationship does not exist under Maryland law unless a complaint pleads facts showing "the agent's power to alter the legal relations of the principal."  *Green*, 735 A.2d at 1048.   The Complaint failed to plead that Davlaw had power to bind Flagstar legally.  To the contrary, the Lombels admitted that Davlaw could not alter Flagstar's legal relations because Flagstar had power to approve all loans before they were made.  Thus, they alleged that Flagstar "required the broker/lenders to submit each loan *for Flagstar's approval* prior to closing or funding."  Complaint ¶ 41 (JA17) (emphasis added).  *See also* id. at ¶ 86 (Flagstar had to "approv[e] the closing" of each loan).  The Lombels also pled that a loan transaction would not occur unless Flagstar first "*agreed* to fund the

48

mortgage prior to closing" and "*agreed* to accept assignment of the mortgage and servicing rights to the mortgage prior to closing." *Id*. at ¶¶ 34, 88 (emphasis added). Finally, Flagstar's Table Funding Request Form for the Lombels' loan stated that Davlaw was a "Wholesale Customer[]" of Flagstar; indicated in multiple locations that Davlaw could make "requests" for funds to Flagstar; and stated that agreement to any funding was subject to "review" by Flagstar for predatory lending issues. Exhibit 2 to Complaint (JA53). The Complaint alleged not a principal-agency relationship but an ordinary buyer-seller arrangement where Flagstar had power to refuse to purchase loans offered by Davlaw.

In the District Court, the Lombels' sole, brief response was that Davlaw and other brokers negotiated rates and loan terms with potential customers and "[o]nce these brokers closed a loan with a customer, Flagstar had no choice but to fund and take ownership of that loan." Memorandum In Opposition To Defendant's Motion To Dismiss at 27. That argument, however, ignores the fact that the Complaint alleges that Davlaw first had to "submit each loan for Flagstar's approval *prior to closing or funding*." Complaint ¶ 41 (JA17) (emphasis added). The Lombels thus admit and pled that Davlaw could not force Flagstar to enter into any loan transaction without Flagstar's consent.

49

The facts which the Lombels alleged in the Complaint demonstrate that Davlaw could not alter Flagstar's legal relationships because it had to make a request that Flagstar provide funds for a loan and Flagstar had discretion to approve or reject each loan. The Lombels failed to allege an agency relationship under Maryland law for this reason as well. *Integrated Consulting Servs., Inc.*, 1999 WL 218740, at *5 ("relationship was one whereby Net-Tel served LDDS as an independent contractor, without binding authority commonly associated with agency" because "Net-Tel lacked the authority to compel LDDS to accept customers recruited by Net-Tel"); *Fare Deals Ltd.*, 180 F. Supp. 2d at 686 (granting motion to dismiss; alleged agents had "no power to alter the legal relations of HRN" because "a buyer of goods who has an exclusive dealing agreement . . . is not his seller's agent"); *Harmon*, 2009 WL 3487808, at *5 (complaint failed to state vicarious liability claim; alleged agent had no "power to alter the legal relations of BankUnited. The complaint shows that BankUnited, and not Smart Money, selected loan applicants"); *IFAST, Ltd. v. Alliance for Telecommunications Industry Solutions, Inc.*, 2007 WL 3224582, at *8-9 (D. Md. Sept. 27, 2007) (complaint failed to plead agency; "[alleged principal] itself viewed [the alleged agent] as a mere service-provider that would be compensated appropriately but was not authorized to alter the [alleged principal's] legal

50

relations"); *Schweizer v. Keating*, 150 F. Supp. 2d 830, 841 (D. Md. 2001) (no

agency relationship where alleged principal "retained the ultimate authority to

accept or reject potential investors presented by the Delta representatives; hence

there can be no legitimate claim that Delta had the power to alter the Ridgewood

Defendants' legal relations"); *Applestein v. Fairfield Resorts*, 2009 WL 5604429,

at *7 (Md. Ct. Spec. App. July 8, 2009) (no agency relationship; alleged agent had

"no authority to sell any vacation ownerships for Fairfield; it merely provided

persons interested in touring a Fairfield facility"); *Schear v. Motel Mgmt. Corp. of

America*, 487 A.2d 1240, 1249 (Md. Ct. Spec. App. 1985) (no agency; "Associates

merely purchased a product from Holiday . . . that carried with it an obligation to

maintain certain standards prescribed by the seller").

### 3.    *The Complaint Did Not Allege That Flagstar Aided And Abetted Davlaw's FFA Violation.*

Finally, the Lombels contend that the "District Court dismissed Appellants'

aiding and abetting claim" (Br. 33), and explain at length why they believe that

Flagstar could be subject to aiding and abetting an FFA violation by Davlaw. Br.

33-47. The argument is no basis for reversal. The Lombels asserted no theory –

in their Complaint or in the briefing below – that Flagstar could be liable for aiding

and abetting an alleged FFA violation by Davlaw, and so it cannot be used as a

basis for seeking reversal of the District Court's ruling. The aiding and abetting

51

theory is meritless in any event; under Maryland law, courts assess whether aiding and abetting liability is possible based on the statute at issue, and the FFA does not allow imposition of FFA liability on lenders based on such a theory.

### a.      The Lombels May Not Invent New Liability Theories For The First Time On Appeal.

It is elemental that "issues raised for the first time on appeal generally will not be considered." *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998). That rule applies with special force to theories of liability: a plaintiff may not seek reversal of an order dismissing her complaint by seeking to rely on legal theories she did not include in her pleading. *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 617 (4th Cir. 2009) (declining to consider theory supporting defamation claim that was "not the one presented in his amended complaint"); *Thomason v. Hitachi Elec. Devices (USA), Inc.*, 194 F.3d 1305 (table), 1999 WL 765875, at *2 (4th Cir. 1999) ("To the extent that she attempts to raise new claims on appeal, those claims are also barred").

The Lombels' Complaint did not allege that Flagstar should be liable to them for alleged FFA violations by Davlaw under an aiding-and-abetting theory. Rather, the Complaint asserted FFA liability against Flagstar based solely on conspiracy or agency theories:

52

> As a result of its conspiracy with broker/lenders, and the
> principal-agent relationship between Flagstar and the
> broker/lenders, Flagstar is jointly and severally liable and
> responsible for the injuries and damages suffered by
> Named Plaintiffs and the Class.

Complaint ¶ 93 (JA31).  In particular, the Lombels first alleged that Flagstar

"conspired with mortgage brokers/lenders in violating the [FFA]," that there were

"multiple overt acts that furthered the conspiracy," and that they were injured "[a]s

a proximate result of Flagstar's conspiracy with mortgage brokers/lenders."

Complaint ¶ 89, 91, 92 (JA29-31).  The Lombels also alleged that Flagstar was

liable because Davlaw was "acting within the scope of [its] agency relationship

with Flagstar."  *Id*. ¶ 90 (JA30).  No mention at all was made of aiding and

abetting with respect to the FFA cause of action in Count One.

The Lombels' briefing matched their pleading:  in response to Flagstar's

motion to dismiss, they argued that Flagstar should be held liable for violating the

FFA under conspiracy and principal-agent theories.  Memorandum In Opposition

To Defendant's Motion To Dismiss at 8-29.  They did not assert that liability

should be imposed under aiding-and-abetting principles.  *Id.*  Instead, the Lombels

stated only that "Flagstar is liable for aiding and abetting the conduct alleged in

Count III-V," the common law causes of action.  *Id.* at 2 n.2.

53

Having never raised an aiding and abetting theory of liability, the Lombels are precluded from seeking reversal in this Court on the grounds that the District Court should not have dismissed the FFA claim. This is true even though the District Court ultimately commented on aiding and abetting liability, and rejected its application in this case.[31]

### b.  Maryland Law Does Not Allow Aiding And Abetting Statutory Violations Unless A Statute Provides Such Liability, Which the FFA Does Not.

As the District Court noted, "Maryland courts have not yet extended the scope of aiding and abetting liability or assignee liability to statutes providing for civil liability where the statute does not expressly impose this additional avenue of liability." Opinion at 9 (JA463) (quoting *Petry*, 597 F. Supp. 2d at 565). The District Court correctly stated Maryland law, and so the Lombels could not have

---

[31]  *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 577 (6th Cir. 2013) ("Kuns first raised this claim in her response to Ford's motion for summary judgment, and did not include it in her subsequent amended complaint. ... While the district court considered this claim, and dismissed it … the court need not have reached it at all, and we decline to do so"); *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 841 (9th Cir. 1995) (argument that was considered by district court, even though untimely, was waived on appeal); *Darby v. South Carolina*, 355 F. App'x 751 (4th Cir. 2009) ("[T]he fact that the district court ultimately considered the untimely objections does not excuse the applicability of the waiver rule"); *United States v. Schronce*, 727 F.2d 91, 93-94 (4th Cir. 1984) (party waived right to appellate review by not objecting to magistrate's report, even though district court ruling was based on "careful review" of report).

sought to impose such liability against Flagstar even if they had pled aiding and abetting theories in their Complaint in the first instance.

In Maryland, "civil aiding and abetting liability is determined on a statute-by-statute basis." *Baltimore-Wash. Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 745 (D. Md. 2008). Here, the FFA contains no language extending liability to those who might have aided or abetted a statutory violation – the FFA instead places liability for statutory violations only on a "mortgage broker". The Lombels' attempt to broaden the statute's reach founders on its plain language. *Marriott Emps. Fed. Credit Union v. Motor Vehicle Admin.*, 697 A.2d 455, 458-59 (Md. 1997) (statutory interpretation "begins, and usually ends, with the words of the statute"; court "may not insert" terms to express an intention "not reflected in the statute's original form").

The absence of any provision in the FFA authorizing aiding and abetting liability stands in stark contrast to other Maryland statutes where the General Assembly decided to permit such liability.[32] Courts must respect and may not

---

[32]     *E.g.*, Md. Code, Nat. Res. § 5-409(a) ("Any person, his aiders, abettors, and counsellors … is liable to the party injured"); Md. Code, State Gov't § 20-801(1) ("person may not: aid, abet, incite, compel, or coerce any person to commit a discriminatory act"); Md. Code, Lab. & Empl. § 3-915 ("person may not knowingly … aid and abet … an employer with the intent of violating this subtitle"); Md. Code, Ins. § 27-204 ("person may not make, ... or aid, abet, or

override the Legislature's decision to limit the scope of statutory liability under the FFA to mortgage brokers.[33]

The District Court was correct, therefore, in holding that if the Lombels had alleged aiding and abetting liability, Flagstar could not be liable under the FFA. It properly refused to "imply expanded liability … for aiding and abetting" without any statutory authorization. Order at 9 (JA463) (citing *Petry*, 597 F. Supp. 2d at 565).

Notwithstanding these clear principles, the Lombels cite a passel of unrelated cases in an attempt to overcome the FFA's specific liability provision;

_____

encourage the making ... of an oral or written statement … that is false or maliciously critical of … insurer"); Md. Code, Health Occ. § 4-601 ("person may not aid or abet unauthorized practice of dental hygiene").

[33]    *Outmezguine v. State*, 641 A.2d 870, 882 n.15 (Md. 1994) ("[I]f the Legislature intended knowledge of the minor's age to be an element of § 419A(c), it could have provided the language used in § 420"); *Kushell v. Dep't Of Natural Res.*, 870 A.2d 186, 195-96 (Md. 2005) ("Legislature has demonstrated that, where it seeks to tax the use of personal property without qualification as to intent at the time of purchase, it knows how to do so in straightforward language."); *Maryland-Nat'l Capital Park & Planning Comm'n v. Anderson*, 909 A.2d 694, 704 (Md. 2006) ("If the Legislature intended otherwise, then it certainly knew how to include the same or similar language when discussing the findings of 'not guilty,' as it did for findings of 'guilty'"); *Eastside Vend Distribs., Inc. v. Coca-Cola, Enters. Inc.*, 2006 WL 1516012, at *4-7 (Md. Cir. Ct. Balt. City May 8, 2006) (rejected aiding and abetting liability under the Maryland Antitrust Act, Md. Code, Com. Law § 11-204(a)(3) because, *inter alia*, statute made no reference to aiding and abetting).

none achieve that goal. *Consumer Protection Division v. Morgan*, 874 A.2d 919 (Md. 2005), did not consider whether a third party could be liable for aiding and abetting another's violation of a statute; rather, each defendant there had individually violated the subject statute, and so they could be jointly and severally liable for paying restitution because they acted in concert with one another. *Id.* at 954. *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.* 665 A.2d 1038 (Md. 1995), likewise did not hold that aiding and abetting liability existed for violations of Maryland statutes; it instead affirmed dismissal of aiding and abetting counts because the complaint was "insufficient to show that [the defendant] had committed a tort." *Id*. at 1050. Finally, *Jones v. Nationscredit Financial Services Corp.*, No. 24-C-02-000572 (Md. Cir. Ct. Balt. City Aug. 9, 2005), did appear to assume that aiding and abetting liability existed, but the statement from an unpublished trial court decision was made in a single sentence, without any supporting analysis, and so provides no useful guidance in deciding this issue.[34]

The Lombels have failed to demonstrate that this Court should expand the FFA beyond the boundaries which the Maryland General Assembly already set.

---

[34] The Lombels also cite other inapposite cases which recognize that aiding and abetting liability exists (*Rice v. Paladin Enters., Inc.*, 128 F.3d 233 (4th Cir. 1997)), and which involved criminal statutes (*Kohler v. State*, 36 A.3d 1013 (Md. Ct. Spec. App. 2012); *Bordley v. State*, 46 A.3d 1204 (Md. Ct. Spec. App. 2012)).

*Hairston*, 1996 WL 119916, at *2 ("[F]ederal courts should use caution in extending state law to a point beyond which a state's highest court has not taken it"). The District Court properly rejected aiding and abetting liability under Maryland law.

## IV. THE COURT CAN AFFIRM THE JUDGMENT ON THE ALTERNATIVE GROUND THAT FEDERAL LAW PREEMPTS THE LOMBELS' FFA CLAIM.

Another serious defect infected the Lombels' FFA claim, and it provides an independent, alternative ground to affirm dismissal of Count One. *MM v. Sch. Dist.*, 303 F.3d 523, 536 (4th Cir. 2002).

Flagstar also moved to dismiss Count One under the Home Owners' Loan Act, 12 U.S.C. §§ 1461 *et seq.* ("HOLA"), explaining that HOLA provides a uniform scheme of federal regulation for federal savings and loan associations which preempted the FFA claim because it interfered with Flagstar's ability to work with mortgage brokers in originating loans. MTD at 33-37 (JA140-44); Reply at 1-4. The District Court did not reach this argument (Opinion at 15 (JA469)), but it provides a separate ground supporting dismissal of the FFA claim. Flagstar respectfully refers the Court to Flagstar's discussion of HOLA in the District Court. *See also Thomas v. Citimortgage, Inc.*, 2013 WL 4786060, at *4,

*7 (D. Mass. Sept, 5, 2013) (HOLA preempts state law claims regulating "high cost" loans; Flagstar table funded the loan).

## **CONCLUSION**

For these reasons, the Court should affirm the judgment of the District

Court.

Respectfully submitted,

s/ Thomas M. Hefferon
Thomas M. Hefferon
*thefferon@goodwinprocter.com*
Joseph F. Yenouskas
*jyenouskas@goodwinprocter.com*
Daniel Zytnick
*dzytnick@goodwinprocter.com*
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001
Tel.: (202) 346-4000
Fax.: (202) 346-4444

Andrew K. Stutzman
*astutzman@stradley.com*
Zeenat A. Iqbal
*ziqbal@stradley.com*
STRADLEY RONON STEVENS &
YOUNG, LLP
1250 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Tel.: (202) 822-9611
Fax.: (202) 822-0140

*Attorneys for Appellee Flagstar Bank, F.S.B*

Dated:  July 11, 2014

74056514.1

60

## CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(a)(7)(C), the undersigned counsel hereby certifies that the foregoing brief complies with the type-volume limitations set out in FED. R. APP. P. 32. The brief is presented in New Times Roman 14 pt. font, and the brief contains not more than 13,789 words.


s/ Thomas M. Hefferon
Thomas M. Hefferon

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2014, I transmitted the foregoing document to the Clerk of the United States Court of Appeals for the Fourth Circuit through the Court's CM/ECF filing system.  Also on that date, I certify that the following counsel of record were served via the CM/ECF system:

Nevett Steele, Jr.
Law Office of Nevett Steele, Jr.
100 E. Pratt Street
Suite 2440
Baltimore, MD 21202

Richard S. Gordon
Benjamin H. Carney
Gordon, Wolf & Charney Chtd.
102 West Pennsylvania Avenue
Suite 402
Towson, MD 21204

*Attorneys for Appellants*

s/ Thomas M. Hefferon
Thomas M. Hefferon